<hr />

### LEWIE v. HALLMAN.

1. EVIDENCE—TRANSACTIONS WITH DECEDENT.—Testimony objected to not incompetent, under sec. 400 of Code.
2. EVIDENCE.—Deeds objected to properly admitted.
3. MORTGAGE.—Finding that deed was intended as mortgage sustained.
4. SPECIFIC PERFORMANCE—EQUITY—MORTGAGES.—When absolute deed at instance of grantor is held to be a mortgage, he must pay all obligations due grantee before he can obtain reconveyance.

Before KLUGH, J., Lexington, January, 1898. Reversed.

Action by Mrs. M. A. Lewie and other heirs at law of J. H. Lewie *v.* D. J. Hallman, for possession of tract of land.

The Circuit decree upon the contested questions is as follows:

The first witness whose testimony is sought to be excluded under Code, section 400, is J. F. Leaphart. He testifies that he knows the land in question; that he owns one acre of it; that he bought it from D. J. Hallman and J. H. Lewie together, in 1883; that he paid J. H. Lewie $35 for it; that J. H. Lewie made the deed to him, and that he bargained with D. J. Hallman for the lot, who was in possession of the plantation. This testimony was duly objected to. Sec. 400 of the Code provides: 1st. That no party to an action

shall be examined in regard to any transaction or communication between such witness and a person at the time of such examination deceased, as a witness against a party then prosecuting or defending the action as heir at law or next of kin of such deceased person, when such examination, or any judgment or determination in such action, can in any manner affect the interest of such witness, or the interest previously owned or represented by him.  2. That no person who has a legal or equitable interest which may be affected by the event of the action shall be so examined. 3. No person who, previous to such examination, has had such an interest which in any manner has been transferred or come to a party to the action, shall be so examined.  4. No assignor of anything in controversy in the action shall be so examined.  Now, the witness, Leaphart, is not a party to this action, and, therefore, is not disqualified upon the ground stated in the first head of the foregoing analysis of section 400; he has not, previous to his examination, had an interest which has been transferred or come to any such party, nor is he the assignor of anything in controversy in the action, and he is, therefore, not disqualified under the third and fourth heads.  Has he a legal or equitable interest which may be affected by the event of this action?  He owns a lot of one acre of the land in question, under a deed from J. H. Lewie.  If the event of this suit shall be in favor of the plaintiffs, they cannot disturb him, for they are estopped by the deed of their ancestor.  If the event shall prove to be in favor of the defendant, he cannot disturb him, for he is estopped both by his deed to J. H. Lewie and by his conduct in negotiating with and inducing Leaphart to buy the land from Lewie.  The interest of J. F. Leaphart cannot, therefore, be affected by the event of this action, and the provisions of section 400 do not disqualify him as a witness in this case.  The same principle applies to the testimony of the other witnesses who took deeds to portions of this land from J. H. Lewie.  The testimony of the defendant as to the transactions and communications between him and J. H.

Lewie must, of course, be excluded. The interest of D. J. Griffith in the 131 acres of land, which he holds under contract to purchase with D. J. Hallman and J. H. Lewie, cannot be affected by the event of this suit. Hallman is estopped by his answer as well as by his contract with Griffith touching this land, to claim the land or the purchase money therefor. Griffith is bound to account to the estate of J. H. Lewie for this land, and the event of this suit can neither increase nor diminish his obligations. Section 400 cannot, therefore, exclude his testimony. The testimony of the two Leapharts and of Griffith and Crosson amply sustain the position of the defendant, that his deed to J. H. Lewie was not intended as an absolute conveyance, but as a security for the balance of his indebtedness on the land. It was a well considered scheme to enable this old man to pay for and retain a part of his land; and its conception and execution are highly creditable to the head and heart of J. H. Lewie. The final act in its consummation of a reconveyance was unfortunately prevented by his death. Any subsequent indebtedness between Hallman and Lewie is not covered by the said deed, and all testimony in reference thereto is irrelevant.

From this decree, declaring the deed a mortgage and its consideration paid, plaintiffs appeal.

*Messrs. Meetze & Muller*, for appellants, cite: *Transactions with decedent:* Code, 400; 47 S. C., 488.

*Messrs. Johnstone & Wingard*, contra, cite: *Transactions with decedent:* 47 S. C., 488; 20 S. C., 572; 34 S. C., 252.

July 19, 1898. The opinion of the Court was delivered by

MR. JUSTICE POPE. The object of the plaintiffs, by their action, was to recover from the defendant a tract of land, which had vested in them as the heirs at law of the late J. H. Lewie. The defendant, by his answer, asserted that while he had conveyed said lands to the ancestor of the

plaintiffs by his deed of 10th of August, 1882, yet that in fact such conveyance was only intended as a mortgage to secure a debt of $350 and the interest thereon. Testimony was taken by a special master. The hearing was had on the pleadings and testimony before his Honor, Judge Klugh, who, by his decree dated 4th of January, 1898, decided that the defendant had established his defense, that his deed was only a mortgage in equity to secure the indebtedness of $350 and the interest thereon, which said indebtedness the defendant had fully paid to the said J. H. Lewie in his lifetime, and that, therefore, the defendant was entitled to require the plaintiffs to execute to him a deed of conveyance for said lands, freed from any and all claims of the plaintiffs that the defendant should pay to them, as a condition precedent to said conveyance, that is to say: all demands the estate of J. H. Lewie might hold against the defendant outside and apart from the purchase money indebtedness secured by said deed as a mortgage. From this decree, the plaintiffs have appealed to this Court upon twenty-six exceptions. However, this Court does not deem it necessary to set out here all these exceptions, for they, in reality, are only intended to have us review the decision of the Court below in these particulars: First. An alleged error in admitting the testimony of certain witnesses, who testified as to transactions and communications of such witnesses and other parties, in their presence, with the deceased, J. H. Lewie, in his lifetime. Second. An alleged error in allowing certain deeds and notes, having relation to transactions with the deceased, J. H. Lewie, in his lifetime, to be introduced in evidence. Third. An alleged error in holding that the testimony established the fact that the deed from Hallman to J. H. Lewie was not a deed, but in fact a mortgage. Fourth. An alleged error on the part of the Circuit Judge in holding that "any subsequent indebtedness between Hallman and J. H. Lewie is not covered by said deed, and all testimony in reference thereto is irrelevant."

So far as the first group of exceptions is concerned, it

may not be amiss to state that the rule governing objections to testimony, as obnoxious to section 400 of the Code of Civil Procedure, as announced in the comparatively recent case of *Norris* v. *Clinkscales*, 47 S. C., 488, meets with our approval. It is thus stated in the case just cited (this section 400): "It describes four classes of persons and three characteristics of testimony. The four classes of persons are these: (1) A party to the action or proceeding; (2) a person having an interest that may be affected by the event of the trial; (3) a person who has had such an interest, but which has been in any manner transferred to, or has in any manner come to, a party to the action or proceeding; (4) an assignor of a thing in controversy in the action. The three characteristics of the testimony are these: (a) In regard to any transaction or communication between the witness and a person deceased, insane or lunatic; (b) against a party prosecuting or defending the action as executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or as assignee or committee of such insane person or lunatic; (c) when the present or previous interest of the witness may in any manner be affected by the testimony or by the event of the trial. It will thus be seen that to justify the exclusion of testimony under this *proviso* of section 400, it should be shown to the satisfaction of the trial Judge: First, that the witness belongs to one or more, or all, of the four classes of persons, whose testimony may, under certain circumstances, be excluded; and, secondly, that his testimony partakes of not merely one or two of the disqualifying characteristics classified under a, b, and c, but that it possesses all three of those characteristics." We have examined the Judge's decree in the case at bar, where he applies the principles laid down in *Norris* v. *Clinkscales, supra,* and the testimony itself of the witnesses, Leaphart, D. J. Griffith, Isaiah Hallman, D. M. Crosson, Elbert Hallman, Wade Leaphart, of whom complaint is made in a number of the grounds of appeal, and our examination satisfies us

that these witnesses were not incompetent to testify, under section 400 of the Code.

As to the second group of exceptions, we are not able to state that there was any error in admitting such papers in evidence. The object of all judicial inquiry is to ascertain the truth, and these deeds and other papers showed how these parties, D. J. Hallman and J. H. Lewie, came together, and what course the previous transactions between these parties took.

As to the third group of exceptions, it may be said that it is very strange, if J. H. Lewie regarded these lands as his own absolute property, he allowed the defendant, D. J. Hallman, to occupy and control this whole body of lands from the year 1882 to the date of Mr. Lewie's death in 1889, without any rent, and that he would never sell any of said lands except through said D. J. Hallman, and most especially made declarations to others that he, Lewie, held the title for the benefit of Hallman. In the light of these facts, this group of exceptions must be overruled.

As to exception 25, which is tne basis of our fourth group, we think the Circuit Judge is in error. We do not regard it as sound law to allow one man an equity, and relieve him from doing equity to the person from whom he is demanding equity. The case of *Lake* v. *Shumate*, 20 S. C., 23, is an apt illustration of this principle of law. Briefly stated, the facts of the case cited were these: Dr. Lake bid off and took title to a tract of land, but he really purchased for one James P. Moore, under an agreement that when Moore paid him the purchase money which Dr. Lake had paid, Dr. Lake would execute title to Moore. Moore went into possession, and mortgaged the land to a third person. Dr. Lake having died, the land was conveyed to his widow, subject to Moore's equities. The widow subsequently lent Moore other moneys. Moore demanded title upon payment of the purchase money alone, but the Court held that, while he had an equity to force title being made

to him, yet Mrs. Lake could force him to pay his other indebtedness to her. As was well said by the present Chief Justice in that case: "There is no doubt that, under the facts proved, Moore would be entitled to demand from the plaintiff specific performance of the agreement between himself and Dr. Lake; but when he invoked the aid of a court of equity for that purpose, that court would require him to do equity, by paying not only the balance due on the purchase money, but also any other indebtedness which he may have incurred to Dr. Lake or to the plaintiff, who stands in his shoes. *Walling* v. *Aiken*, McMull. Eq., 1; *Secrest* v. *McKenna*, 1 Strob. Eq., 356." To this extent the Circuit Judge was in error. We must grant a new trial, but will confine that trial to the ascertainment of what, if anything, is now due by the defendant to the estate of J. H. Lewie, and require the payment by Hallman of that indebtedness, when ascertained, before he shall be decreed to receive a title to the land from the plaintiffs.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the action remanded to that Court for a new trial upon the principles herein laid down.